**STANOLIND OIL & GAS CO. et al. v. LOGAN.***

No. 8178.

Circuit Court of Appeals, Fifth Circuit.
Sept. 8, 1937.
Rehearing Denied Sept. 30, 1937.

*Writ of certiorari denied 58 S.Ct. 409, 82 L.Ed. ——.

Carlton Winn and Rhodes S. Baker, both of Dallas, Tex., and Burney Braly, of Fort Worth, Tex., for appellants.

Geo. W. Rice, of Fort Worth, Tex., for appellee.

Before FOSTER, HUTCHESON, and HOLMES, Circuit Judges.

FOSTER, Circuit Judge.

This is a suit by a trustee in bankruptcy to regain actual possession of a mineral lease, as an asset of the estate, of which, it is alleged, he was unlawfully deprived. The record is voluminous, covering some 886 pages of the printed transcript, but, omitting reference to immaterial matters, the case may be somewhat briefly stated, as follows.

Virginia Oil & Refining Company, a Delaware corporation, admitted to do business in Texas, was adjudicated bankrupt by the United States District Court for the Northern District of Texas, in involuntary proceedings, on January 29, 1923. Gaylord H. Chizum was appointed trustee on March 10, 1923. Among the assets surrendered on the schedules were a number of mineral leases covering some 150,000 acres of land in what is now known as the East Texas oil field. The written leases were turned over to the trustee and had some potential speculative value, but no actual market value, as the field was then unproven or wild-cat territory. Among these leases was one covering 987 acres of land in the Marshall Mann survey in Gregg and Upshur counties, Tex. This lease was executed on October 31, 1919, by J. J. Flewellen to Gaines B. Turner, president of the bankrupt, as trustee, and was in turn assigned by Turner to the bankrupt. This lease was in the form known as a twenty-year paid-up lease, running for twenty years from its date, and as long thereafter as oil might be produced, requiring no payment of rentals to keep it in force, and with no obligation on the lessee to develop the lease, unless an offset well should be drilled on adjacent land.

Chizum administered the estate and filed a detailed account of his administration, which was approved at a meeting of the creditors held on September 13, 1923. In this he reported receipts of $51,653.87 and expenses of administration amounting to $4,778.55, leaving the balance on hand for distribution to creditors. He listed taxes and lien claims greatly exceeding this amount and gave as his opinion that ordinary creditors would receive nothing. As to the East Texas leases, he said: "That there were a great many leases in

the assets of said estate, which were all wild cat, and which your trustee, using his best efforts, endeavored to sell but was' absolutely unable to do so, and, although he still holds same, they are, in his opinion worthless." Chizum's final account was approved and he was ordered discharged by the referee on October 14, 1926. On November 2, 1926, the referee issued a certificate closing the estate. The bankrupt has never been discharged.

Oil was discovered in the East Texas oil field in 1930. Shortly thereafter Turner, former president of the bankrupt, instituted a suit in the Sixty-seventh District Court of Tarrant county, Tex., in which John Lamkin was appointed receiver of the bankrupt. After Lamkin's appointment, on petition of creditors, the bankruptcy proceedings were reopened for further administration, on January 29, 1931, and B. K. Isaacs was appointed trustee as successor to Chizum. It then appeared probable that sufficient would be realized from the East Texas leases to pay creditors in full and leave a substantial balance for the stockholders of the bankrupt. Serious litigation developed between parties claiming to be stockholders and, in a suit instituted in equity in the federal court for the Northern District of Texas, Walter Logan was appointed receiver to stand by and ultimately take over and distribute any surplus assets recovered by the trustee. We had occasion to consider the appointment of Lamkin, the reopening of the bankruptcy proceedings and the appointment of Logan as receiver, in Berl v. Crutcher, 60 F.(2d) 440. What was there said need not be repeated.

Before the bankruptcy proceedings were reopened, Lamkin, the state court receiver, on January 13, 1931, executed a lease of the northern 200 acres of the Flewellen tract to Simms Oil Company, for the price of $7.50 per acre, about one-half of its value. This lessee assigned an undivided one-half interest in the lease to Stanolind Oil & Gas Company and an undivided one-fourth interest to' Continental Oil Company. Stanolind Oil & Gas Company in turn assigned an undivided one-fourth of the lease to Continental Oil Company. The lessees began drilling promptly and the No. 1 well was drilled in July, 1931. Later, all the stock of Simms Oil Company was acquired by Tide Water Oil Company and Simms Oil Company was dissolved. These assignees from Lamkin developed the lease and recovered oil worth about $500,000, at an expense of about $300,000. The sale by Lamkin was approved by the state court. On petition of Isaacs, trustee, the state court ordered the balance of the funds in the hands of Lamkin to be turned over to him and Lamkin was discharged as receiver. Lamkin had collected about $13,000, largely by the sale of leases. After deducting expenses of administration, the amount turned over to Isaacs was about $3,500.

Lamkin did not have possession of any muniments of title to the East Texas leases and no order was entered by the bankruptcy court ratifying the assignments made by him. There is testimony tending to show that Isaacs agreed with Lamkin to ratify sales made by the latter and also that Isaacs executed leases of other parts of the Flewellen tract, referring to the lease by Lamkin in describing the property.

On September 6, 1932, Isaacs, as trustee in bankruptcy, and Logan, as receiver in equity, instituted this suit by filing a bill in the bankruptcy proceedings against Simms Oil Company, Stanolind Oil & Gas Company, and Continental Oil Company, seeking to recover possession of the lease transferred to Simms Oil Company by Lamkin and for an accounting for oil recovered from the lease. Later, Logan was appointed cotrustee in bankruptcy. Isaacs resigned and Logan became sole trustee and continued the suit as sole plaintiff. Tide Water Company intervened and was made a party defendant.

Defendants challenged the jurisdiction of the court; moved to dismiss the bill; alleged the validity of the lease from Lamkin, on the ground that the Flewellen lease had been abandoned by Chizum and title had revested in the bankrupt; pleaded ratification by Isaacs; estoppel by his acts; laches; and limitation of two years, under the provisions of section 11d, Bankruptcy Act (11 U.S.C.A. § 29 (d). In the alternative defendants prayed for reimbursement of expenses incurred in developing the lease.

The District Court ruled adversely on all the contentions of defendants, including the claim for reimbursement, dismissed the suit as to Logan in his capacity as receiver, but entered judgment in his favor as trustee in bankruptcy, as prayed for. From that judgment this appeal is

prosecuted. There are 61 assignments of error, but we need not discuss them separately.

■ It is settled that a trustee in bankruptcy is not obliged to accept onerous or unprofitable property when surrendered as part of the estate and has a reasonable time to elect whether he will do so. If he abandons it, title revests in the bankrupt. But the closing of the proceedings without abandonment by the trustee would not have that effect. First Nat. Bank v. Lasater, 196 U.S. 115, 25 S.Ct. 206, 49 L.Ed. 408. Therefore, the question of primary importance for decision is whether the first trustee, Chizum, abandoned the lease. This presents purely a question of fact. The account and report by Chizum above referred to conclusively shows that at that time he had not abandoned the lease and still held it. There is nothing to show abandonment by him thereafter unless it be inaction. The property was not onerous. The lease had about sixteen years to run, with no taxes, rentals, or other expenses to pay, and at that time there were no adverse claims to it. For cogent reasons given by the District Court, in a well-considered unpublished opinion found in the record, it is highly improbable that Chizum ever intended to abandon the lease. The burden to show abandonment rested on defendants. Carter v. Rives (C.C.A.) 9 F.(2d) 62. We agree with the District Court in the conclusion that the lease was not abandoned.

■ Under the provisions of the National Bankruptcy Act, § 70, as amended (11 U.S.C.A. § 110), title to the property of a bankrupt, except such as is exempt, vests in the trustee, and his successors as of the date of adjudication. Prior to the appointment of the trustee, the property of the bankrupt is in custodia legis in the bankruptcy court. Fairbanks Steam Shovel Co. v. Wills, 240 U.S. 642, 36 S.Ct. 466, 60 L.Ed. 841. Necessarily, it is also in custodia legis during the interval between the discharge of the first trustee and the appointment of his successor.

■ When the property of a bankrupt has come into the custody of the bankruptcy court, no other court has jurisdiction to take over and administer it without the consent of the bankruptcy court. Murphy v. John Hofman Co., 211 U.S. 562, 29 S.Ct. 154, 53 L.Ed. 327.

■ Gregg and Upshur counties are within the territorial jurisdiction of the Eastern District of Texas, but that is unimportant. The District Court for the Northern District of Texas had possession of all the property surrendered by the bankrupt, wherever situated, and jurisdiction to entertain this suit. Chicago Board of Trade v. Johnson, 264 U.S. 1, 44 S.Ct. 232, 68 L.Ed. 533; May v. Henderson, 268 U.S. 111, 45 S.Ct. 456, 69 L.Ed. 870; Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct. 270, 75 L.Ed. 645. It is immaterial that Logan as receiver in equity was joined in bringing the suit. In that capacity he was neither a proper nor a necessary party and may be disregarded.

■ The state court did not have jurisdiction over the lease and the sale by Lamkin as receiver was an absolute nullity which the approval by the state court did not cure. Simms Oil Company and others holding under it took nothing by the attempted transfer. Bryan v. Bernheimer, 181 U.S. 188, 21 S.Ct. 557, 45 L.Ed. 814; Cf. Straton v. New, 283 U.S. 318, 51 S.Ct. 465, 75 L.Ed. 1060.

The suit was promptly brought by Isaacs and in the meantime the situation of defendants had not changed.

■ Isaacs was not guilty of laches. The provision of section 11d, Bankruptcy Act (11 U.S.C.A. § 29 (d), barring suits by or against the trustee unless brought within two years after the estate is closed applies to causes of action existing before bankruptcy but does not apply to proceedings such as this, on a cause of action arising after bankruptcy, in the course of administration. Dushane v. Beall, 161 U.S. 513, 16 S.Ct. 637, 40 L.Ed. 791; Hammond v. Whittredge, 204 U.S. 538, 27 S.Ct. 396, 51 L.Ed. 606.

■ Appellants rely upon ratification by Isaacs as trustee and estoppel against him by his course of conduct. There was no express ratification by Isaacs and no order of the bankruptcy court to that effect. Conceding for the sake of argument that Isaacs might be estopped as an individual dealing with his own property, as an officer of the court he was without capacity to do any act that would prejudice the estate under his administration or to waive the exclusive jurisdiction of the bankruptcy court. Isaacs v. Hobbs Tie & Timber Co., 282 U.S. 734, 51 S.Ct.

270, 75 L.Ed. 645; Whitney v. Wenman, 198 U.S. 539, 25 S.Ct. 778, 49 L.Ed. 1157; Lincoln Nat. Life Ins. Co. v. Scales (C.C.A.) 62 F.(2d) 582.

 In asking for an accounting and money judgment based thereon, the trustee is in effect seeking to collect a debt due the estate. The doctrine of set-off and recoupment is recognized by the National Bankruptcy Act. Section 68 (11 U.S.C.A. § 108). The provisions of section 68 are permissive rather than mandatory and courts of bankruptcy apply equitable principles in granting or withholding such relief. Cumberland Glass Mfg. Co. v. De Witt, 237 U.S. 447, 35 S.Ct. 636, 59 L.Ed. 1042; Gardner v. Chicago Title Co., 261 U.S. 453, 43 S.Ct. 424, 67 L.Ed. 741, 29 A.L.R. 622. Under the provisions of article 7393, Rev.Stat. of Texas 1925, a trespasser, who has had adverse possession in good faith for one year or more before the commencement of a suit to oust him, may recover the value of permanent improvements he has put upon the land. In passing upon the claim for reimbursement, the District Court found that defendants had actual knowledge of the bankruptcy proceedings, through an examination of the bankruptcy record by their attorney, and therefore were not in good faith. In denying relief, he rested his decision mainly on the Texas cases of Houston Production Co. v. Mecom Oil Co. (Tex.Com.App.) 62 S.W.(2d) 75, and Liles v. Thompson (Tex.Civ.App) 85 S.W. (2d) 784, which decisions are in point if his conclusion is supported by the facts.

Under the unusual conditions shown in this case, whether the state court had jurisdiction to administer and dispose of the lease presented a highly controversial issue, which has brought about litigation for nearly five years before its decision. Had it been decided the lease had been abandoned, defendants would have been protected by the order of the state court approving the sale by its receiver. When the receiver was appointed in the state court and the lease was sold by him, the bankruptcy proceedings were dormant and there was no trustee in office. A close question of fact was presented as to whether the lease had been abandoned by the trustee. This question had not even been raised when the lease was executed by Lamkin. In acquiring the lease, defendant acted upon the advice of counsel. It cannot be said that an examination of the record would positively disclose that the lease had not been abandoned and competent lawyers might well honestly differ as to this. Defendants had peaceful possession of the land for more than a year before this suit was begun and it is not shown they were guilty of fraud. In the meantime they had started to develop the lease and to protect it by drilling off-set wells. They were not obliged to cease operations because of the institution of this suit and were not thereafter, for that reason alone, to be considered in bad faith. They recovered from the land oil approximately worth some $500,000 and the expense of doing so was in the neighborhood of $300,000. The estate will receive the benefit of this development, which the trustee was not in a position to undertake. We disagree with the District Court in his conclusion that defendants were in bad faith. Applying equitable principles, they are entitled to recover their expenses in developing and operating the lease, to be offset against the value of the oil produced, in accounting. The following cases sustain this conclusion: Sartain v. Hamilton, 12 Tex. 219, 62 Am.Dec. 524; Dorn v. Dunham, 24 Tex. 366; Gulf Ref. Co. v. U. S., 269 U.S. 125, 46 S.Ct. 52, 70 L.Ed. 195.

 What has been just said does not apply to a recovery of the amount paid to Lamkin for the lease. The Texas statute grants the right of recovery for the amount expended on permanent improvements, valuable to the true owner of the land, but goes no further. Simms Oil Company paid about $1,500 for the lease, which amount the District Court found to be about one-half its value at that time. Lamkin collected some $13,000 from the sale of assets of the bankrupt estate and turned over to Isaacs only about $3,500. The purchase price of the lease is not traced into this fund and, instead of benefiting by Lamkin's activities, the bankruptcy estate suffered a considerable loss. On this item the equities are with the trustee.

In so far as the judgment appealed from denies appellants a recovery by way of set-off for the amount expended for development and operation of the lease, it is reversed and remanded for further proceedings, with instructions that in stating the account, credit be given to appellants, as their interests may appear, for their expenses incurred in developing the lease

and marketing the minerals recovered. In all other respects the judgment appealed from is affirmed. Costs in the District Court to be taxed against defendants. Costs of appeal to be divided equally. One-half to be taxed against appellee, to be paid out of the fund in his hands as trustee. One-half to be taxed against appellants, in proportion to their respective interests.

Affirmed in part, reversed in part, and remanded.

## On Petitions to Certify.

PER CURIAM.

The petitions of appellants to certify the above-entitled cause to the United States Supreme Court are denied.